IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION
CIVIL CASE NO.

| | |
|---|---|
| KIMBA "KYM" HALL<br><br>Plaintiff,<br><br>vs.<br><br>CAROWINDS LLC;<br>CEDAR FAIR SOUTHWEST INC.;<br>CEDAR FAIR, L.P. DBA CEDAR FAIR<br>ENTERTAINMENT COMPANY,<br><br>Defendants. | 0:19-cv-02146-MGL<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

**NOW COMES** the above-named Plaintiff, Kimba "Kym" Hall, and brings this action for personal injuries sustained at Carowinds amusement park in South Carolina on August 12, 2016, and complaining of the Defendants herein, Plaintiff respectfully shows and alleges unto the Court as follows:

## PARTIES

1.    **Plaintiff Kimba "Kym" Hall** (hereinafter "Plaintiff") brings this action for personal injuries sustained at the Carolina Harbor water park at Carowinds in South Carolina on August 12, 2016.  Plaintiff is a citizen and resident of York County, South Carolina.

2.      Defendant **"Carowinds, LLC"** is a limited liability Delaware corporation, incorporated for the purpose of owning and operating assets in connection with the Carowinds amusement park.  Upon information and belief, the sole member of Carowinds, LLC is Cedar Fair Southwest, Inc.  Carowinds, LLC is registered and in good standing to conduct business in South Carolina, and its registered agent for service of process is Corporation Service Company, 1703 Laurel Street, Columbia, South Carolina, 29201.

3.      Defendant **"Cedar Fair Southwest, Inc."** is, upon information and belief, a limited liability Delaware corporation, and a wholly-owned subsidiary of Cedar Fair, L.P. (d/b/a "Cedar Fair Entertainment Company"). Cedar Fair Southwest, Inc. is registered and in good standing to conduct business in the state of South Carolina, and its registered agent for service of process is Prentice Hall Corporation, 1703 Laurel Street, Columbia, South Carolina, 29201.

4.      Defendant **"Cedar Fair, L.P."** is, upon information and belief, a publicly traded Delaware limited partnership, doing business as "Cedar Fair Entertainment Company."  Its registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808. Upon information and belief, Defendant Cedar Fair, L.P. acquired "Carowinds" amusement park in or around June of 2006.

5.    **"Cedar Fair Entertainment Company"** is one of the largest regional amusement park operators in the world, and owns eleven amusement parks, including "Carowinds," a combination amusement and water park.

6.    Defendants are properly named in this action.

7.    At all times mentioned in this complaint and upon information and belief, Defendants owned, controlled, supervised, and/or maintained the premises and operated an amusement park known as Carowinds located, partially, in Fort Mill, South Carolina.

8.    Carowinds invited the general public, including Plaintiff, to enter its premises to purchase food, beverages, merchandise, and ride amusement rides.

9.    Plaintiff, at all times mentioned in this complaint, was an invitee of Defendants.

10.    At all times relevant to this action, Defendants are liable for the acts and/or omissions of its respective agents, servants and/or employees acting within the scope of their agency and/or employment pursuant to the doctrine of respondeat superior.

## JURISDICTION

11.     Plaintiff brings her complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

12.     The parties to this action and the acts and omissions complained of herein are subject to the jurisdiction of this Court and venue is proper.

## FACTUAL ALLEGATIONS

13.     Carowinds is a 407-acre amusement park, located adjacent to Interstate 77 in Charlotte, North Carolina. Although it has an official North Carolina address, the park is located on the state line of the Carolinas, with a portion of the park also located in Fort Mill, South Carolina.

14.     The water park within Carowinds, known as "Carolina Harbor," is located in Fort Mill, South Carolina.

### The Waterpark Accident of August 12, 2016

15.     In the late afternoon of August 12, 2016, Plaintiff was spending time at Carolina Harbor with her daughter (Crystal Myers), her 11-year old granddaughter (A.A.M.), and A.A.M.'s friend (O.M.); who was also 11 years old at the time.

16.     Plaintiff, A.A.M., and O.M. entered the waterslide area of Carolina Harbor called "Seaside Splashworks" while Crystal enjoyed time by the pool area.

17.     According to Carowinds' website, as set forth on the attached Exhibit A, "Seaside Splashworks" is a "multi-level play structure" featuring "over 80 play elements, including dozens of interactive spray jets, water guns, **adventuresome net bridges**, awesome water wheels, six impressive water slides and a giant 423-gallon tipping bucket that drenches everyone below……… the perfect mixture of adventure, relaxation and entertainment."

18.     Shortly after 4:00 PM, A.A.M. and O.M. began climbing up the stairway to the platform area leading to the water slides. Plaintiff followed them.

19.     A.A.M. and O.M. crossed the net bridge on the way to the water slides successfully, and went down the water slide.

20.     Plaintiff attempted to follow them across the net bridge, a bridge she had never crossed before, to follow them down the water slide.

21.     As Plaintiff began to step across the net bridge, and as she progressed to somewhere in the middle of the net bridge.

22.     The net bridge, by design, had a significant sag in the middle, similar to the shape of a bowl, which caused the net bridge to slope downward from the platform

to the center of the net bridge and slope upward from the middle of the net bridge to the platform on the opposite side.

23.    Unfortunately, despite the design, the net bridge contained no handrails for safety.

24.    Because of the uneven surface caused by the sag and the net-like material, the net bridge was not conducive to good balance and stability.

25.    Because of the design of the net bridge, Plaintiff's toe(s) became caught in one of the openings of the net bridge.

26.    As a result, Plaintiff lost her balance and fell face down, her face violently striking against the hard and abrasive surface of the net bridge.

27.    Without any safety guard rails placed inside the net bridge, Plaintiff was unable to keep herself from falling.

28.    The surface of the net bridge, as her face struck it from the violent fall, was, upon information and belief, extremely abrasive and sharp making it a dangerous or potentially hazardous structure in a public place, likely to injure patrons, like the Plaintiff, in the event of a fall.

29.    The dangerous or potentially hazardous net bridge is the responsibility of the defendants.

30.     Bleeding profusely, Plaintiff lay there, dazed, as people walked around her from one platform to the other.

31.     She asked for help, but no one that passed her offered her assistance.

32.     Likewise, the lifeguard at the pool, who, upon information and belief was and employee or independent contractor of Carowinds and/or the water park and/or one of the named Defendants, remained only a few feet away, yet did not come to provide any assistance.

33.     After approximately 10 minutes or more, Plaintiff, now bleeding profusely, dazed and in great pain, literally crawled to the other side of the net bridge, and down the steps.

34.     As Plaintiff crawled, she left a trail of blood going down the steps, and then across the concrete, before pulling herself up into a chair beside the pool.

35.     During this time, Plaintiff was experiencing excruciating and unrelenting pain, and blood continued to pour from her face and mouth.

36.     As she bled by the pool area, a young life, guard, upon information and belief was and employee or independent contractor of Carowinds and/or the water park

and/or one of the named Defendants,  passed her and then stood no more than 10 feet away, but still did not provide her any assistance.

37.    Still bleeding and in pain, her daughter, Crystal, who had accompanied her to Carowinds that day, found her bleeding by the pool area.

38.    At this point, Crystal went over to the young life guard and asked for medical assistance.

39.    The lifeguard then came over to where Plaintiff was still bleeding profusely.

40.    Both Plaintiff and Crystal were begging for medical attention.

41.    Crystal, meanwhile, specifically approached the young lifeguard and asked for medical attention, and for someone to bring either a wheelchair or a stretcher to take Plaintiff to a first aid station and then to an ambulance.

42.    Even still, the young lifeguard delayed in getting much-needed emergency medical assistance, and approached the situation with a nonchalant attitude.

43.    Meanwhile, so much blood had poured onto the concrete floor and the stairs that parents were actively and consciously scaring their children away from all the blood.

44.     When the young life guard finally arrived, instead of immediately requesting assistance for Plaintiff, he instead sent for someone to return with a bottle of an ammonia-smelling substance to begin scrubbing the blood up from the ground.

45.     In other words, immediately following this accident, the blood on the ground seemed a greater concern to Carowinds' representatives than Plaintiff's health, as she sat there bleeding profusely in the heat of the sun.

46.     Finally, after Crystal continued to plead with the lifeguard for medical assistance, he called for a wheelchair, and Plaintiff was finally taken to the first aid station, where the ambulance was called.

47.     Nearly one hour had passed from the time Plaintiff had tripped, lost her balance, fallen, and smashed her face on the net bridge until she finally arrived at a first aid station at Carowinds.

48.     This sequence of events marked the beginning of a medical nightmare that will affect Plaintiff for the rest of her life.

**Dangerous Net Bridge at Seaside Splashworks**

49.     The water slide "net bridge" that Plaintiff attempted to cross that day is several feet up in the air, and connects the entrance of one slide to the others.

50.     Because of the uneven surface and sagging in the net bridge (a horizontal curvature from left to right and a slight dip down in the middle as one walks across), because of fishnet like netting on the surface posing a tripping hazard, and a hazard for loss of balance and falling, and because there are no hand rails inside the net bridge to help patrons balance themselves as they cross over the net bridge, the net bridge presents an inherent danger, particularly to older adults, who may not have the natural ability to balance that they once had.

51.     To put the situation into perspective, attached to this Complaint is a photograph of the entrance to the net bridge, and then several photographs of the net bridge itself. These photographs were taken on Saturday, Aug 13, 2016, the day following the accident.

52.     The first photograph, marked Exhibit B, depicts the actual entrance to the net bridge area in the water park, taken the day after the accident.

53.     There is an orange stairway at the bottom center of the photograph, just to the right of the lady wearing the orange shirt.

54.    This photo of the main entrance going into the water slide area where the net bridges are located, shows the area that Plaintiff ascended prior to reaching the net bridge area.

55.    About 10 steps ascend from the concrete exterior floor, which has water all over it because this is a water slide area, up into the first landing area.

56.    Just to the left and to the right of the main stairway area, there are blue handrails, which appear to be in place beginning around the second step from the bottom.

57.    These handrails, naturally, provide stability for water park guests both entering and exiting the water slide area, as they ascend to and descend from the elevated platforms where the net bridges and the tops of the water slides are located.

58.    However, as will later be seen, part of the problem, which contributed to this accident, occurred because there are no handrails or anything else for guests to hold onto inside of the dangerous net bridges.

59.    However, there are no warning signs, neither in the entry area, nor any area around the water slides about any potential dangers based upon the design of the net bridges.

60.     Waterpark guests have no way of knowing the potential danger that awaits them after they enter the waterslide area, based upon the design.

61.     Plaintiff remained unaware of any danger as she ascended up the initial stairway to the waterpark with her granddaughter and her granddaughter's friend.

62.     Also, the flooring inside the net bridge was made of an inherently dangerous or potentially hazardous material, hard enough and apparently sharp enough to do great damage should a patron slip and fall.

63.     Plaintiff's face after the fall, cut, bruised, damaged, and full of broken bones, proves the danger of the flooring substance in that net bridge.

64.     As can be seen from this photograph, marked Exhibit C, the center of the net bridge sags down, slightly, from both the entrance and the exit area.

65.     The net bridge sags even further, creating an increasingly uneven surface as soon as a person steps off the platform to start to cross it.

66.     This sagging is further demonstrated in the next photographs, attached as exhibits to the complaint.

67.    In the photograph, marked Exhibit D, taken from the side of the net bridge at a slightly different angle, there is a dip, which stretches all the way across that bridge, from the entrance, at the right side of the photo as shown, to the exit section, on the left side of the photo as shown.

68.    In the photograph, marked Exhibit D, there are also large, potentially hazardous holes, in the walking surface, presenting a tremendous tripping hazard, and/or a loss of balance and falling hazard – with no warning signs.

69.    The photograph, marked Exhibit E, provides an interior shot of the net bridge, which gives a very clear inside illustration of the dip, which moves all the way across the net bridge.

70.    The photograph, marked Exhibit E, also shows the view that Plaintiff had when she stepped out onto the net bridge before the traumatic accident occurred. Note, again, the absence of a warning sign about any tripping hazard, and/or no sign warning about a loss of balance and falling hazard, nor any other warning that the structure is as dangerous as it turned out to be.

71.    Plaintiff was facing at least 4 hazards on the net bridge when she was injured, which Plaintiff will attempt to explain by this illustration marked as Illustration 1, shown immediately below.

ILLUSTRATION 1



72.    In analyzing Illustration 1, above, Point B is the point where Plaintiff stepped off of the platform onto the net bridge. Point A is the middle of the net bridge, where the sag is most prominent. Point C is the platform on the other side of the net bridge.

73.    This net bridge featured at least four hazards, all which contributed to Plaintiff's fall and injury.

74.    These 4 hazards include:

(1)    The "dip" that exists in the bridge as the Plaintiff crosses from left to right at point "A";

(2)    The bowl-like "sag" that Plaintiff faces as soon as she steps onto the net bridge from the platform, as shown in the Illustration below;



(3)    The fishnet-like surface that she steps on, which causes her foot to get caught, as shown in the Illustration below;



      (4)     And, the fact that there is no meaningful type of handrail system on either side of the net bridge to help stabilize patrons who may be using the net bridge as a means of foot transit from one water slide to the other.

75.     In the attached photograph, marked Exhibit E, one can see very clearly the "left-to-right view," referred to above. This photograph shows the sagging contour, dipping down to the center, which creates a lack of stability and leads to loss of balance and falling issues and potential tripping hazards.

76.     Again, the sagging, bowl-like contour, contributing to instability and the plaintiff's fall, in addition to Exhibit E, is demonstrated by the illustration immediately below:

15



77.    As shown on Exhibit A, Defendants advertised these "adventuresome net bridges" as an attraction on its website to draw in potential visitors and customers - not just "net bridges," but "adventuresome" net bridges.

78.    However, just as no warning signs were posted about possible tripping or loss of balance and falling hazards before patrons entered these "adventuresome" net bridges, nor were warnings posted at the entrance to the waterslides, likewise, no warnings are found posted on Carowinds' public website either.

79.    Throughout all of this, Plaintiff exercised due care and was walking on a foreseeable path.

**Medical and Dental Consequences**
**Resulting from the Net Bridge**

80.    As a result of entering the "adventuresome" net bridge, however, Plaintiff sustained serious personal and bodily injuries.

81.    Plaintiff's medical injuries are extremely significant and complex, but for the sake of a plain statement can be summarized into three major categories: These

include (1) major dental injuries to her teeth and jaw bone, (2) permanent scarring and disfigurement, and (3) life-threating, trauma-induced Latent autoimmune diabetes in adults (LADA), all as a result of tripping and losing her balance on the net bridge.

82.    These injuries have caused her to suffer and endure considerable pain and discomfort.

83.    Plaintiff has been compelled to expend significant sums of monies for numerous medical and dental treatments and for the services of medical and dental providers under whose care she has been and continues to be.

84.    Plaintiff, upon information and belief, will be compelled to expend additional monies for further medical and dental treatment required in the future and for the rest of her life.

85.    Plaintiff has and will continue to be prevented from attending to her ordinary affairs and duties.

86.    Plaintiff, upon information and belief, will continue to be deprived of the normal enjoyments of life she otherwise would have.

87.    Plaintiff, upon information and belief, will continue to endure discomforting pain and suffering, which she otherwise would not have, had she not been injured and damaged.

88.    Plaintiff has incurred personal injury, pain, suffering, loss of enjoyment of life, and impairment of health and bodily efficiency as a result of this incident.

## FOR A FIRST CAUSE OF ACTION

### (Negligence)

89.    Plaintiff restates and realleges every allegation as if repeated herein verbatim.

90.    At all relevant times in this complaint, defendants owed plaintiff a duty to maintain its premises in a reasonably safe condition, to correct dangerous or potentially hazardous conditions of which defendants either knew or should have known, by the use of reasonable care, and to properly warn plaintiff of any dangerous or potentially hazardous conditions.

91.    Defendants further eroded duty of care to its patrons, including plaintiff, to discover risks and take safety precautions to eliminate foreseeable risks.

92.    Defendants constructed a defective net bridge that caused a patron, the plaintiff, to trip, fall, and suffer the medical complications set forth in paragraph 67.

93.    Defendants, as owner and operator of an amusement park, violated its duty to use reasonable care to protect plaintiff from unreasonably dangerous or potentially hazardous conditions it created or knowingly permitted to exist on the premises, and was careless, negligent, and/or grossly negligent in its acts and/or omissions at the time and place above mentioned in the following particulars:

      a.    In failing to construct and or maintain its premises in a reasonably safe condition;

      b.    In failing to keep its premises free from hazards that are within its control to prevent;

      c.    In failing to correct dangerous or potentially hazardous conditions, which defendants knew or should have known about with the use of reasonable care;

      d.    In failing to provide adequate verbal or visual warnings of the dangerous or potentially hazardous conditions on the net bridge (walking path);

      e.    In failing to place warning signs, guardrails, handrails, painted markings or other measures to reduce the risk of tripping and/or loss of balance and falling due to the uneven surface upon the defective net bridge;

f.    In failing to inspect its premises for the safety of its patrons and invitees;

g.    In creating a dangerous or potentially hazardous condition and unnecessary risk to invitees;

h.    In failing to promptly correct the unreasonably dangerous or potentially hazardous conditions once created;

i.    In failing to train employees, agents and or servants to thoroughly patrol property owned and maintained by the defendants to discover safety hazards;

j.    In failing to exercise due care for the safety of patrons and guests;

k.    In failing to use that degree of care and caution that a reasonable and prudent person or entity would have used under the same circumstances;

l.    In failing to otherwise exercise due care with respect to the matters alleged in the complaint;

m.    By such other particulars as may be found through discovery or trial.

94.    That as the direct and proximate cause of the aforesaid negligent, grossly negligent, careless, reckless, willful, and wanton acts and omissions of the Defendants, Plaintiff:

a.    Was severely and painfully injured, and temporarily disabled;

b.    Suffered injuries as set forth at paragraph 81 herein;

c.    Has incurred and will continue to incur, expenses for the services of doctors, dentists, nurses, hospitals, therapists, medicines, and special equipment;

d.    Was subjected to extreme pain, mental anguish, suffering, and discomfort over a long period of time;

e.    Has incurred, and will continue to incur, pain, suffering, and loss of enjoyment of natural life;

f.    Has suffered, and will continue to suffer emotional distress, embarrassment, humiliation, and anxiety;

g.    Has experienced, and will continue to experience physical impairment;

h.    Suffered damage to her personal property;

i.    Has been and will be prevented from attending to Plaintiff's usual and ordinary social and domestic activities and/or responsibilities;

j.    That Plaintiff has suffered, and will continue to suffer emotional distress, embarrassment, humiliation, and anxiety;

k.    Has sustained a loss of future income.

l.    Faces a considerable loss in her life expectancy.

## **FOR A SECOND CAUSE OF ACTION**

**(Negligent Hiring, Training, Supervision and Retention)**

95.    Plaintiff restates and realleges every allegation as if repeated herein verbatim.

96.    The young lifeguard in this case, who was, upon information and belief apparently a Carowinds employee, and therefore an agent of Carowinds and/or the other defendants, and who was operating at the time of Plaintiff's injury under the doctrine of respondeat superior, acted negligently in not providing Plaintiff with first aid in a timely manner following her injury, as she sat bleeding in plain view.

97.    Upon information and belief, this one-hour delay, as Plaintiff's blood glucose rose to dangerous or potentially hazardous levels, exacerbated her medical and dental issues.

98.    The lifeguard's delay in getting prompt medical attention also exacerbated Plaintiff's pain and suffering, as she could have received pain-relieving morphine, which she was eventually administered by medical personnel as a result of the fall, at least one hour earlier than actually occurred.

99.    But, because of the lifeguard's delay in failing to promptly act, Plaintiff lay in pain, unnecessarily, for a period of at least one hour, bleeding, and suffering, with her teeth virtually knocked out, under the hot sun.

100.    The lifeguard's delay greatly prolonged and increased Plaintiff's pain and suffering as a result of the fall.

101.    Plaintiff is informed and believes that Defendant was negligent, careless, reckless, wanton, and grossly negligent at the time and place hereinabove mentioned in the following particulars:

    a.  In failing to have in place policies and procedures to train, supervise and/or retain its employees, or if such procedures were in place, in failing to enforce them;

    b.  In failing to have in place adequate policies and procedures to mandate compliance by its employees with policies procedure, and standards related to the safety of its customers and maintenance of its water park and if such procedures were in place, in failing to enforce them;

    c.  In failing to ensure that its employees had the proper training and experience to be able to provide for the safety of the subject water park and customers of the Defendants.

    d.  In generally failing to use the degree of care and caution that a reasonably prudent entity would have used under the same or similar circumstances.

102.    That because of the acts and/or omissions of Defendant as enumerated hereinabove, which resulted both proximately and directly in the damages also set out

above, the Plaintiff seeks actual damages against Defendants as well as punitive damages.

103. Plaintiff is informed and believes that she is entitled to judgment against Defendants in this matter.

**WHEREFORE,** Plaintiff prays of the Court as follows:

1. That judgment be entered against Defendants for actual damages in an amount to be determined by a jury of her peers;
2. For punitive damages in an appropriate amount, as may be warranted by the evidence at trial;
3. For the costs incurred in bringing this action, and
4. For such other and further relief as this Court may deem just and proper under the circumstances.

Respectfully submitted, this the 31st day of July, in the Year of our Lord, 2019.

/S/Donald M. Brown, Jr.
Donald M. Brown, Jr.
   SC Bar Number 9902
   NC Bar Number 14178
   Federal ID Number 6307
   brownandassociatespllc@gmail.com
Brown & Associates, PLLC
Park South Professional Center
10440 Park Road
Suite 200
Charlotte, North Carolina 28210
(704) 542.2525
(704) 541-4751 (fax)
*Attorney for Plaintiff, Kimba "Kym" Hall*