

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| KIMBA "KYM" HALL,<br>　　　Plaintiff,<br><br>vs.<br><br>CAROWINDS, LLC; CEDAR FAIR<br>SOUTHWEST INC.; and CEDAR FAIR, L.P.,<br>*d/b/a Cedar Fair Entertainment<br>Company*,<br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 0:19-02146-MGL |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT**

**I.     INTRODUCTION**

This is a common law action for negligence and negligent hiring, training, supervision, and retention, which is based on Plaintiff Kimba "Kym" Hall's (Hall) alleged injuries resulting from her trip and fall at Carowinds Amusement Park (Carowinds). Hall brought this lawsuit against Defendants Carowinds, LLC, Cedar Fair Southwest, Inc., and Cedar Fair, L.P., d/b/a Cedar Fair Entertainment Company (collectively, Defendants).

Carowinds, LLC operates the amusement park and owns the land where it is located. Cedar Fair Southwest, Inc., is a part owner of Carowinds, LLC, and Cedar Fair, L.P. is the parent company of both Carowinds, LLC, and Cedar Fair Southwest, Inc. The Court has diversity jurisdiction over the matter in accordance with 28 U.S.C. § 1332.

Pending before the Court is Defendants' motion for summary judgment. Having carefully considered the motion, the response, the replies, the record, and the applicable law, the Court will grant the motion.

## II.    FACTUAL AND PROCEDURAL HISTORY

On August 12, 2016, Hall was a guest at Carowinds, where she visited an attraction called Seaside Splashworks (Seaside) in the North Carolina portion of the park. Complaint ¶¶ 15-16. Seaside is "'a multi-level play structure' featuring 'over 80 play elements, including dozens of interactive spray jets, water guns, adventuresome net bridges, . . . water wheels, six . . . water slides and a . . . 423-gallon tipping bucket that drenches everyone below.'" Complaint ¶ 17 (quoting Carowinds' Website).

When Hall attempted to cross one of Seaside's net bridges, she alleges her "toe(s) became caught in one of the openings of the net bridge." Complaint ¶ 25. As a result, Hall states she lost her balance and fell face down, with her face striking against the net bridge (the incident). *Id*. ¶ 26. Hall's complaint describes the walking surface of the net bridge as a "fishnet like netting" and alleges that it was the cause of her fall. *Id*. ¶ 50. She claims "(1) major dental injuries to her teeth and jawbone, (2) permanent scarring and disfigurement, and (3) life-threatening, trauma-induced latent autoimmune diabetes in adults, all as a result of tripping and losing her balance on the net bridge." *Id*. ¶ 81.

Depositions were taken in this case establishing the following relevant facts: Hall visited Carowinds on the day of the incident with her daughter, Crystal Myers (Myers), her granddaughter, A.M., and her granddaughter's friend, O.M. Hall Dep. at 27-28. The group arrived at the park sometime mid to late afternoon and proceeded to Seaside shortly after arriving. *Id*. at 28-29.

Once at Seaside, Hall and Myers put down their bags and towels at a set of open chairs nearby, while A.M. and O.M. began playing on the Seaside play structure. *Id*. at 32-33. Eventually, Hall also entered the play structure, climbing up a set of stairs on her way to find the two girls. *Id*. at 34-35. According to A.M., Hall crossed two to three of Seaside's net bridges before spotting A.M. and O.M. A.M. Dep. at 28.

Once Hall located the two girls, she decided to exit Seaside and approached the net bridge where the incident occurred. Hall Dep. at 42. Regarding the cause of the fall, Hall states in her deposition, "I was across the bridge and there were several children on the bridge. I never had any contact with any child, but they were coming up one side. And so I went like I was going to go to the other side and my foot hung and I—I was trying to walk forward and I fell." *Id*.

After Hall filed her lawsuit in this Court, Defendants filed a motion for summary judgement. Hall subsequently responded in opposition, and Defendants then filed their reply. This Court, having now been fully briefed on the relevant issues, is prepared to adjudicate Defendants' motion on the merits.

### III.   STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions and identifying those portions of the record "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most

3

favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23. Hence, the granting of summary judgment involves a three-tier analysis.

First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law. Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327. The primary issue is whether the material facts present a substantive disagreement as to require a trial, or

whether the facts are sufficiently one-sided that one party should prevail as a matter of law. *Anderson*, 477 U.S. at 251–52.  Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

IV.     **DISCUSSION AND ANALYSIS**

As the Court stated above, the incident occurred in North Carolina.  Therefore, North Carolina's substantive tort law applies to this case.  *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (holding "[a] federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules"); *see also Boone v. Boone*, 546 S.E.2d 191, 193 (S.C. 2001) ("Under traditional South Carolina choice of law principles, the substantive law governing a tort action is determined by . . . the law of the state in which the injury occurred.").

Accordingly, as per North Carolina state law, to survive Defendants' motion for summary judgment on her claim of negligence, Hall must show: "(1) that [Defendants] failed to exercise proper care in the performance of a duty owed [to her]; (2) the negligent breach of that duty was a proximate cause of [her] injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances." *Von Viczay v. Thoms*, 538 S.E.2d 629, 630 (N.C. Ct. App. 2000) (citation omitted).  "If any such elements are lacking from [Hall's] show of evidence, summary judgment is proper." *Id*.

As to the first factor, a landowner in North Carolina owes lawful visitors "the duty to exercise ordinary care to keep the premises in a reasonably safe condition and to warn the invitee of hidden perils or unsafe conditions that can be ascertained by reasonable inspection and supervision." *Byrd v. Arrowood*, 455 S.E.2d 672, 674 (N.C. 1995) (citation omitted).  "A

5

landowner does not, however, have a duty to warn anyone of a condition that is open and obvious." *Draughton v. Evening Star Holiness Church of Dunn*, 843 S.E.2d 72, 76 (N.C. 2020) (citing *Garner v. Greyhound Corp.*, 108 S.E.2d 461, 468 (N.C. 1959)). As such, "when the condition that allegedly caused the injury, viewed objectively, is open and obvious, judgement as a matter of law is appropriate." *Id*. (citing *Deaton v. Bd. of Trs. of Elon Coll.*, 38 S.E.2d 561, 565-66 (N.C. 1946)).

### A.     *Whether Defendants are entitled to summary judgment with respect to Hall's negligence claim*

Defendants contend they are entitled to summary judgment on Hall's claim of negligence because the condition of which Hall complains was open and obvious. Defendants' Memorandum at 9. More specifically, Defendants argue "[Hall's] claim that the [Seaside] net bridge attraction is a concealed and dangerous condition of Carowinds' premises is not supported by any evidence." *Id*. at 8. Thus, according to Defendants, they had no duty to warn of any dangers associated with the net bridge. *Id*. at 9.

Hall, on the other hand, maintains the "[net bridge] constituted a concealed and dangerous condition under the circumstances in which [she] was injured," and therefore, Defendants owed a duty to warn her of the condition of the net bridge. Response at 2.

"A condition is open and obvious if it would be detected by 'any ordinarily intelligent person using his eyes in an ordinary manner.'" *Draughton*, 843 S.E.2d at 76. (quoting *Coleman v. Colonial Stores, Inc.*, 130 S.E.2d 338, 340 (N.C. 1963)). "If the condition is open and obvious, a visitor is legally deemed to have equal or superior knowledge to the owner, and thus a warning is unnecessary." *Id*. (citation omitted). Therefore, "a condition may be open and obvious even if the particular plaintiff found it difficult to notice." *Id*. at 77. "Summary judgement is further

6

supported when the plaintiff has had the opportunity to become familiar with the condition that contributes to his injury." *Id*.

Furthermore, "North Carolina common law [] recognizes the defense of contributory negligence; thus, a plaintiff cannot recover for injuries resulting from a defendant's negligence if the plaintiff's own negligence contributed to his injury." *Id*. (citing *Smith v. Fiber Controls Corp.*, 268 S.E.2d 504, 509 (N.C. 1980)). "This rule is closely related to the principle that a defendant has no duty to warn of an open and obvious condition because a plaintiff is negligent if he fails to reasonably adjust his behavior in light of an obvious risk." *Draughton*, 843 S.E.2d at 76-77 (citing *Smith*, 286 S.E.2d at 507).

"Whether construed in terms of negating a defendant's duty to warn, or in terms of establishing a plaintiff's contributory negligence, it is clear that a plaintiff may not recover in a negligence action where the hazard in question should have been obvious to a person using reasonable care under the circumstances." *Dowless v. Kroger Co.*, 557 S.E.2d 607, 609 (N.C. Ct. App. 2001) (quoting *Branks v. Kern*, 359 S.E.2d 780, 782 (N.C. 1987)). Put simply, "'when an invitee sees an obstacle not hidden or concealed and proceeds with full knowledge and awareness, there can be no recovery.'" *John Walter Kelly v. Regency Ctrs. Corp.*, 691 S.E.2d 92, 96 (N.C. Ct. App. 2010) (quoting *Wyrick v. K-Mart Apparel Fashions*, 378 S.E.2d 435, 436 (N.C. 1989)).

Accordingly, in cases such as this, "the facts must be viewed in their totality to determine if there are factors which make the existence of a defect . . . a breach of defendant's duty and less than 'obvious' to the plaintiff." *Dowless*, 557 S.E.2d at 609-10 (quoting *Pulley v. Rex Hospital*, 392 S.E.2d 380, 384 (N.C. 1990)) (emphasis omitted). The Court may consider factors such as "the nature of the defect, the lighting at the time of the accident, and whether any other reasonably

foreseeable conditions existed which might have distracted the attention of one walking in the area in question." *Id*. at 610 (alterations omitted) (emphasis omitted).

Here, the record evidence shows the incident occurred in broad daylight, and Hall fails to assert she was unable to see the net bridge or unaware the floor of the net bridge was made of "fishnet like netting." Complaint ¶ 50. Hall also admits to seeing others use the net bridge and testified in her deposition that children were on the bridge where the incident occurred when she decided to cross it. Additionally, as the Court mentioned above, A.M.'s testimony reflects that Hall crossed two or three of Seaside's other net bridges while on the play structure before the incident. A.M. Dep. at 28. Hall neglects to address this testimony from A.M., and there is no argument by Hall that the net bridges Hall crossed before the incident were any different than the net bridge where the incident eventually occurred.

Moreover, on the issue of contributory negligence, Defendants' expert, Farheen S. Khan, Ph.D. (Khan), determined Hall could have exited Seaside's play structure without crossing a single net bridge. *See* Kahn Report at 2 (stating "[t]he use of the net bridge features on [Seaside] was a personal choice[;] Hall could access all the platforms/slides on [Seaside] without ever having to use any of the net bridges on the structure").

North Carolina courts have, on multiple occasions, upheld judgement as a matter of law for defendants in cases with facts similar to those presented here. For example, in *Draughton*, the North Carolina Supreme Court upheld summary judgment in favor of defendant landowners where the plaintiff tripped over an uneven set of stairs while serving as a pallbearer because the condition in question was open and obvious, given the circumstances. 843 S.E.2d at 76.

There, the court reasoned that "[t]he distinct height and appearance of the step, the clear visibility of the set of stairs, and plaintiff's previous experience walking down the same set of

8

stairs show that a reasonable person in plaintiff's position would have been aware of the step's condition and taken greater care." *Id*. at 78.

Likewise, in *Garner*, the North Carolina Supreme Court upheld judgement as a matter of law for defendant shopkeeper where the plaintiff fell on her way out of defendant's shop. 108 S.E.2d at 468. The plaintiff argued "that the entryway to the shop was defective and dangerous because it, in conjunction with the sidewalk, created an optical illusion or camouflaging effect that made it appear as if there was no drop-off." *Id*. at 467. The Court, however, held that "[t]he alleged 'optical illusion' under the facts and circumstances of this case was not a defect or danger against which the defendant had a duty to guard" and that the shopkeeper was under no duty to warn the customer of a possible dangerous condition because the drop-off was open and obvious. *Id*. at 468.

Furthermore, the North Carolina Court of Appeals, in *Byrd*, upheld summary judgement in favor of a defendant landowner where the plaintiff slipped on water while walking back from the bathroom. 455 S.E.2d at 673. The plaintiff "walked up a sloped hall to the bathroom[,]" and "while on her way back, she slipped and fell." *Id*. She argued items along the wall prevented her from walking close to the wall so as to use the wall for support and that unsupervised children were playing in the area. *Id*.

The court reasoned, however, that because the plaintiff knew it was raining outside, the wet floor was an open and obvious condition the plaintiff should have avoided, and her assertion that "the presence of young children prevented her from seeing the floor [fails to] overcome the obvious fact that the floor might have been wet due to people tracking in." *Id*. at 674. In fact, the court held that factors like a crowded hallway "would only put plaintiff on notice to be extra careful." *Id*.

9

Like the plaintiffs in *Draughton*, *Garner*, and *Byrd*, Hall had the opportunity to become familiar with the condition in question when she crossed over similar net bridges in the minutes before the incident.  Also, the record establishes Hall knew she was on a water park attraction and understood there were children on and around the net bridge before she decided to cross.  As was the reasoning in *Byrd*, these factors should have put Hall on notice to be extra careful.

Thus, the Court concludes the net bridge where the incident occurred was an open and obvious condition in light of the circumstances surrounding Hall's fall.  Her statement "the fact that [she] tripped in the netting shows that it was a concealed and dangerous condition[,]" Response at 12, therefore, strains the bounds of credulity.  In sum, when viewing the facts in their totality and drawing all inferences in favor of Hall, the Court concludes that Defendants lacked a duty to warn Hall of the potential dangers of the net bridge because it is an open and obvious condition of Defendants' premises.

Additionally, the Court holds that Hall failed to use reasonable care in light of the open and obvious risk posed by the net bridge, and therefore, is contributorily negligent as a matter of law.  *See Draughton*, 843 S.E.2d at 79 ("Because the condition . . . would be open and obvious to a reasonable person, defendant had no duty to warn plaintiff.  Similarly, because plaintiff . . . did not heed the risk obviously presented by the distinct appearance of the [open an obvious condition] . . . [her] own negligence contributed to [her] fall.").

Consequently, the Court will grant Defendants' motion for summary judgment with respect to Hall's claim of negligence.  Given that this holding is dispositive of Hall's first cause of action, the Court need not address the parties' remaining arguments on the issue of negligence.  *See Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If

the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

### B. *Whether Defendants are entitled to summary judgment on Hall's claim of negligent hiring, training, supervision, and retention*

As the Court noted above, Hall's complaint brought claims for both negligence and negligent hiring, training, supervision, and retention. Defendants thereafter moved for summary judgment with respect to both claims.

Although Hall opposed Defendants' motion with respect to her claim of negligence, she neglected to oppose summary judgment as to her negligent hiring, training, supervision, and retention cause of action. The Court, therefore, concludes Hall abandoned that claim. *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended."); *See also Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 n. * (4th Cir. 2014) (noting that failure to present legal arguments waives the argument). Accordingly, the Court will grant Defendants' motion for summary judgment on this claim, too.

### V. CONCLUSION

In light of the foregoing discussion and analysis, Defendants' motion for summary judgement is **GRANTED**. Consequently, all other pending motions are **RENDERED AS MOOT**.

**IT IS SO ORDERED.**

Signed this 16th day of August, 2021, in Columbia, South Carolina.

                                              /s/ Mary Geiger Lewis  
                                              MARY GEIGER LEWIS  
                                              UNITED STATES DISTRICT JUDGE